# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### AUGUST 19, 2008 Session

## TIMOTHY SANDERS v. CB RICHARD ELLIS, INC.

**Appeal from the Circuit Court for Madison County**
**No. C05-492     Roy B. Morgan, Jr., Judge**

---

### No. W2007-02805-COA-R3-CV - Filed September 22, 2008

---

This is a premises liability case. Appellant sued Appellee for injuries sustained in a fall on an icy parking lot that was maintained by Appellee. The material facts of the case are undisputed and, on principles of comparative fault, the trial court determined that Appellant was at least 50% liable for the injuries he sustained in that Appellant (1) ignored the open and obvious danger when he undertook to walk inside the bank, (2) decided not to use the drive-through window in order to avoid traversing the ice, and (3) undertook a risk that a reasonable person would have avoided. Finding no error, we affirm.

**Tenn. R. app. P.3; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Danny R. Ellis, Jackson, TN, for Appellant

Ashley Yarnell Baskette, Memphis, TN, for Appellee

## OPINION

The material facts of this case are undisputed. On December 22 and 23, 2004, a winter storm moved through Jackson, Tennessee. On December 23, it snowed from approximately 1:00 a.m. until 2:00 a.m.; the snow resumed around 3:00 p.m. that day. The average temperature on December 23 was 18°F, with the high temperature reaching only 21°F. On December 23, 2004, Appellant Timothy Sanders drove from Bolivar, Tennessee to Jackson, Tennessee, a distance of approximately 27 miles, to do some business at Regions Bank.

Regions Bank is located at 1861 Highland Avenue in Jackson. Upon reaching the bank, Mr. Sanders testified that he noticed that the parking lot looked "real icy," and "like it had not been salted." Although the drive-through window was open and accessible that day, Mr. Sanders chose not to use it. Rather, he parked his car on a slope, which was covered in ice and attempted to enter

the bank. As Mr. Sanders traversed the icy slope, he fell and allegedly sustained an injury to his left shoulder.

On December 21, 2005, Mr. Sanders filed a Complaint against Regions Bank, alleging negligence. Specifically, Mr. Sanders asserts that Regions Bank "did not provide a handrail to assist customers as they entered the bank building," and that Regions Bank did not exercise due care in breach of its duty to Mr. Sanders, which breach was the direct and proximate cause of Mr. Sanders' injuries. In its answer, filed on February 24, 2006, Regions Bank denied the material allegations of the complaint, and raised as affirmative defenses failure to state a claim, and comparative fault on the part of Mr. Sanders. Regions Bank also raised the defense that "if [Mr. Sanders'] injuries were caused by a lack of proper maintenance of the parking facility...[then] CB Richard Ellis, Inc. was under contract to conduct routine parking maintenance at this facility." In response to this defense, Mr. Sanders moved the court to amend his complaint to add Appellee CB Richard Ellis, Inc. as a party-defendant. On or about March 13, 2006, Mr. Sanders filed an amended complaint, alleging negligence against CB Richard Ellis, Inc. On June 14, 2006, CB Richard Ellis answered the amended complaint, raising as an affirmative defense, comparative negligence on the part of Mr. Sanders.

On May 14, 2007, the trial court granted Regions Bank's motion for summary judgment, specifically finding that "based upon the undisputed facts reasonable minds can not differ that [Mr. Sanders'] own actions on December 23, 2004, under comparative fault principles, establish that [Mr. Sanders] is at least fifty percent (50%) responsible for the injuries he alleges in this case and as such he is precluded from recovery against Regions Bank."[1]

On June 12, 2007, CB Richard Ellis, Inc. filed a motion for summary judgment. Based upon the trial court's specific finding (in its order granting Regions Bank's motion for summary judgment, *supra*) that Mr. Sanders was 50% at fault in the accident, CB Richard Ellis asserted that Mr. Sanders could not recover from them on the same theory and facts that he alleged against Regions Bank. In support of its motion, CB Richard Ellis filed a statement of undisputed material facts. Mr. Sanders did not file a responsive set of undisputed material facts in this case.

Following a hearing, the trial court granted CB Richard Ellis' motion for summary judgment by order dated November 27, 2007. The trial court's decision was based upon its finding that Mr. Sanders was 50% at fault in the accident. Mr. Sanders appeals and raises one issue for review as stated in his brief:

> Whether the trial court erred when it granted summary judgment to [CB Richard Ellis] finding there was no genuine issue that [Mr. Sanders] was fifty (50%) percent at fault.

---

[1] Regions Bank is not a party to this appeal.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id***. In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. See ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. ***See Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. ***See Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

The material facts of this case are not disputed; consequently, the sole question is whether CB Richard Ellis is entitled to judgment as a matter of law. In granting Regions Bank's motion for summary judgment, the trial court specifically found that Mr. Sanders was 50% at fault. Because CB Richard Ellis and Regions Bank were both party-defendants to Mr. Sanders' suit, and because the facts alleged against CB Richard Ellis are the same as alleged against Regions Bank, it appears that the issue of Mr. Sanders' comparative fault in this accident is *res judicata*. In ***Lee v. Hall***, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990), the court stated:

> In order to be successful, a party asserting a res judicata defense must demonstrate: (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties were involved in both suits; (3) that the same cause of action was involved in both suits; and (4) that the underlying judgment was on the merits.
>
> The doctrine of collateral estoppel is an extension of the principle of res judicata. It is applicable to an issue which was

litigated and which was essential to the judgment in a suit between the same parties.

A valid judgment on the merits will bar a second suit on the same issue between the same parties, but the court must be presented with a copy of the opinion, order, or record of the prior action showing that the judgment was final.

*Id.*

The problem with applying the doctrine of *res judicata* in this case is that, as pointed out by the ***Lee*** Court, the proper method to present the defense is by pleading (answer) and not by motion. *See* Tenn. R. Civ. P. 8.03. Because the order granting Regions Bank's motion for summary judgment was not entered until after CB Richard Ellis filed its answer, the answer does not aver the affirmative defense of *res judicata*. Consequently, the *res judicata* defense was not raised until CB Richard Ellis' motion for summary judgment. Therefore, despite the fact that the causes of action and supporting facts alleged against defendant CB Richard Ellis are identical to those alleged against defendant Regions Bank, we cannot dispense with this case upon the theory of *res judicata* due to the affirmative defense not being properly raised in the answer (through no fault of CB Richard Ellis). We must review the facts alleged against CB Richard Ellis and determine anew whether these facts support a finding of comparative negligence on the part of Mr. Sanders sufficient to bar his claim against CB Richard Ellis.

Mr. Sanders testified that he sustained injuries when he slipped on an icy sidewalk at Regions Bank. There is no dispute in the record that Mr. Sanders appreciated the dangerous condition presented by the icy parking lot prior to his decision to cross it:

Q [to Mr. Sanders]. Do you recall what the weather was [on December 23]?

A. Bad.

Q. Tell me about that, what you recall.

A. Icy and cold.

Q. You had driven from Bolivar I think you said.

A. Yes, Ma'am.

Q. Do you recall what the road conditions were.

A. Bad.

Q.  Bad could mean a lot of things to a lot of people.  When you say bad, what do you mean?

A.  Well, it [sic] was a lot of ice.

Concerning the condition of the parking lot itself, Mr. Sanders testified, in relevant part, that:

Q.  Tell me what you recall about the parking lot when you arrived.

A.  It was real icy, and that was it.

\*                                        \*                                        \*

Q.  Do you recall what the conditions of the parking lot were?

A.  It was bad, like it hadn't been salted.

Q.  Could you tell that from inside your vehicle before you got out?

A.  No, I didn't–when I pulled in, I got out and walked around.  That was it.  I didn't pay it that much attention.

Q.  You've testified that the parking lot was bad.

A.  Right.

Q.  When did you notice that the parking lot was bad?

A.  When I was–well when I was driving in and obviously when I got out.

Mr. Sanders further testified that, although the drive-through window was open, he chose not to use it:

Q.  Does that bank have a drive-thru?

A.  Yes, ma'am.

Q.  Any particular reason you didn't use the drive-thru that day?

-5-

A. No, ma'am.

Q. You could have used the drive-thru?

A. Yes, ma'am.

Q. And if you had used the drive-thru, you wouldn't have had to exit
your vehicle?

A. Yes, ma'am.

Traditionally, liability has not been imposed on a premises owner by courts of this state for injuries that resulted from defective or dangerous conditions that were "open and obvious." *See McCormick v. Waters*, 594 S.W.2d 385 (Tenn. 1980); *Kendall Oil Co. v. Payne*, 293 S.W.2d 40 (Tenn. Ct. App. 1955). In cases after the decision of the Tennessee Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), liability in premises liability actions has been determined according to the principles of comparative fault:

> [w]hen an invitee is injured because of dangers that are obvious, reasonably apparent, or as well known to the injured party as to the owner or operator of the premises, liability, if any, should be determined in accordance with the principles of comparative fault analysis and the general negligence law of this state.

*Cooperwood v. Kroger Food Stores, Inc.*, No. 02A01-9308-CV-00182, 1994 WL 725217 (Tenn. Ct. App. Dec. 30, 1994).

Our Supreme Court has provided further guidance in determining liability in these types of cases. In *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), the Court held that "the duty issue must be analyzed with regard to foreseeability and gravity of harm, *and the feasibility and availability of alternative conduct that would have prevented the harm*." *Id*. at 43 (emphasis added).

Moreover, our Supreme Court has held that an assumption of the risk issue (i.e., the reasonableness of a party's conduct in confronting a risk) should be analyzed "under the principles of comparative fault." *Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994). Specifically, the *Perez* Court held that "attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk." *Id*.

Applying the above authority to the undisputed facts in this case, and specifically from Mr. Sanders' own testimony, there is no dispute that he knew and appreciated the dangerous condition of the icy parking lot prior to his decision to walk across it. Mr. Sanders was cognizant of the fact that there had been a winter storm in the area that day, and that the roadways were "bad." Mr. Sanders specifically testified that he noticed the parking lot was "real icy" when he arrived at the bank, and that it appeared that the lot had not been salted. In short, there is no dispute that the danger faced by Mr. Sanders was open and obvious.

Moreover, there is no dispute that the drive-through window was available as an alternative to walking into the bank. Mr. Sanders testified that, he was aware that the drive-through was open, but he chose not to use it. By his own admission, had Mr. Sanders used the drive-through window, this incident could have been avoided.

Finally, it is undisputed that, despite his awareness of the open and obvious dangerous condition and despite his knowledge that the drive-through was an available alternative to his crossing the icy lot, Mr. Sanders undertook to walk into the bank. From the undisputed facts, Mr. Sanders' actions were not reasonable in light of the surrounding circumstances and the potential risk
.

On appeal, Mr. Sanders asserts, *inter alia*, that the question of comparative fault should be decided by a jury. We concede that, if there was a dispute of material fact concerning Mr. Sanders' actions, then same should be decided by the fact finder. However, the facts of this case are undisputed; consequently, there is no need for fact finding. The issue before us is a legal question. As such, we review that decision *de novo* upon the record with no presumption of correctness. Tenn. R. App. P. 13(d). Applying these legal principles to the undisputed facts in the record, we cannot conclude that the trial court erred in granting CB Richard Ellis' motion for summary judgment.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed to the Appellant, Timothy Sanders, and his surety.

_____
J. STEVEN STAFFORD, J.