IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2021 Session

## JOSEPH CHECKAN v. SOUTHERN TOWING COMPANY LLC ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-003024-18  Rhynette N. Hurd, Judge**

———————————————————

### No. W2020-00636-COA-R3-CV

———————————————————

This is a defamation case that was dismissed by the trial court on a motion to dismiss. Plaintiff, a former riverboat captain, predicated his defamation claim on a letter sent by a lawyer for the owner of a drawbridge to the riverboat captain's former employer. The purpose of the letter was to put the employer on notice that damage had been caused to the drawbridge by one of the employer's towboats.  In its oral ruling, which was incorporated into its dismissal order, the trial court identified several grounds which it concluded supported dismissal.  Not addressed by the trial court were several procedural defenses raised by the defendant, including a defense based on an alleged lack of personal jurisdiction.  Notably, the defendant has not waived its personal jurisdiction defense on appeal.  Because jurisdiction is a prerequisite to an adjudication on the merits of the case, we vacate the trial court's dismissal order and remand the matter for a consideration of the defendant's personal jurisdiction defense.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Michael M. Thomas and W. Neil Thomas III[1], Chattanooga, Tennessee, for the appellant, Joseph Checkan.

S. Camille Reifers, Memphis, Tennessee, Daniel Oberdorfer[2] and Nicole L. Faulkner, Minneapolis, Minnesota, for the appellee, Canadian Pacific Railway.

---

[1] Attorney W. Neil Thomas, III is listed as co-counsel on the Appellant's brief, but he did not participate at oral argument.

[2] Attorneys Reifers and Oberdorfer are listed as co-counsel on the Appellee's brief, but they did not participate at oral argument.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Although the controversy on appeal concerns the Shelby County Circuit Court's dismissal of a libel claim asserted against the Appellee "Canadian Pacific Railway" ("the Appellee"), the underlying case began in the Hamilton County Circuit Court when the Appellant Joseph Checkan ("Mr. Checkan"), a riverboat captain, filed a complaint against his former employer, Southern Towing Company, LLC ("Southern Towing"). Among other alleged claims, Mr. Checkan asserted that he had been wrongfully terminated by Southern Towing. The case was later transferred to the Shelby County Circuit Court ("the trial court") by way of an agreed order.

Subsequent to the transfer of the case, Mr. Checkan filed an "Amended Complaint" detailing the bases for his action against Southern Towing and naming the Appellee as an additional defendant. In relevant part, the "Amended Complaint" alleged the following:

> 5. On Thursday, August 10, 2017, Checkan began a two-week shift with hi[s] boat, M/V Mary Elizabeth, on the Mississippi River.
> 6. On August 12, 2017, while approaching a bridge near [La Crosse], Wisconsin, he was told to stop to wait for a train to cross the bridge, which was owned by the Canadian-Pacific Railway Company. After that train crossed, he was told to wait for another train to cross, even though at the time under maritime rules he had the right of way.
> 7. While waiting for the second train to cross the bridge, Checkan performed a controlled landing, during which he caused his barge system to come to rest next to a piling okf the bridge with no damage either to the barge or the bridge.
> 8. After reporting the controlled landing to the bridge operator, the bridge Operator confirmed that there had been no damage, and Checkan's posting pilot, Tom Hinton, witnessed the all-clear given by the bridge operator.
> 9. Checkan completed his run on the Mississippi and returned home on August 24, 2017.
> 10. On September 7, 2017, Checkan was to start his next run and called Southern Towing to confirm his rental car with Enterprise Rent-A-Car to use to go to the site of the start of the run. At that time, he was told by Bobby Jones in the Human Resources Department of Southern Towing not to report and that an investigation had been commenced in connection with his last run.
> 11. Unknown to Checkan, Canadian Pacific sent to Southern Towing a letter, dated August 29, 2017, complaining that the Mary Elizabeth had caused property damage to a drawbridge near [La Crosse], Wisconsin[.]

12. Checkan waited for approximately two weeks with no notifications from Southern Towing until September 26, 2017, when he was told he had been terminated for failure to report an accident. Although Checkan requested a letter which stated the grounds for termination, none was given, although he was told informally that Southern Towing had received a bill from Canadian Pacific for $175,000, purportedly for damage done at the time of the controlled landing. Because there had been no such damage to the bridge, Checkan was wrongfully terminated.

. . . .

14. Southern Towing and Canadian Pacific have published the fact that Checkan caused an accident with the Mary Elizabeth which he did not cause and was terminated for cause. He has been unable to be gainfully employed as a River Boat captain. As a result of the libelous statement and his wrongful termination Southern Towing and Canadian Pacific have defamed his reputation as a boat captain.

The lawsuit against Southern Towing was ultimately nonsuited by Mr. Checkan. As for the Appellee, it filed a motion to dismiss raising a host of issues. Among other things, it argued that "Canadian Pacific Railway" is not a legal entity, that there was a lack of personal jurisdiction, and that Mr. Checkan had failed to state a claim. Concerning the substantive merits of Mr. Checkan's libel claim, the Appellee primarily contended in an accompanying memorandum that the August 29 letter referred to by Mr. Checkan was protected by the litigation privilege and that Mr. Checkan had failed to sufficiently plead that any defamatory statement was made about or concerning him. Mr. Checkan later moved for an order permitting him to amend his complaint, but the trial court denied the request by written order. In its order denying Mr. Checkan's motion to amend, the trial court also granted the Appellee's motion to dismiss. Notably, the order of dismissal stated that it granted the motion "without ruling on the . . . other procedural bases for dismissal." Among other things, the trial court concluded that the letter relied upon by Mr. Checkan to support his libel claim was a "prelitigation letter and . . . [was] entitled to . . . privilege." This appeal eventually followed.[3]

## ISSUES PRESENTED

Mr. Checkan's brief presents three issues for this Court's review, restated verbatim as follows:

(1) Whether it was error for the Court below to consider matters outside the allegations of the Amended Complaint and make incorrect assumptions

---

[3] Alleged actions of Southern Towing are not at issue in this appeal.

about the facts of the case in granting a motion to dismiss under Rule 12.02(6) of the <u>Tennessee Rules of Civil Procedure</u>?

(2) Whether it was error for the court below to dismiss the Amended Complaint by shielding a defamatory statement through the use of the litigation privilege where the statement was made against a person not a party to the litigation by a person not a party to the litigation.

(3) Whether the subject of a libelous statement must be actually named in the statement where his identity is otherwise known or easily capable of being known.

For its part, the Appellee does not raise any independent issues. It casts the three issues raised by Mr. Checkan in the following terms:

1. Whether the absolute litigation privilege applies to a pre-litigation letter providing notice of proposed litigation.

2. Whether the letter forming the basis of Plaintiff's defamation claim was "of and concerning" the Plaintiff when the letter does not mention, refer to, or concern Plaintiff, even by implication or reasonable inference, as a matter of law.

3. Whether the Circuit Court properly referred to the express language of the letter at issue, which was required to be attached as an exhibit to the Complaint, when it granted Defendant's Motion to Dismiss.

The Appellee's brief also states that it "expressly reserves" the right to make its raised procedural defenses which were unaddressed by the trial court if the matter should be remanded on those grounds, but it nonetheless requests that dismissal be affirmed on the merits by this Court.

## DISCUSSION

Although the parties' arguments on appeal have primarily focused on the propriety of the substantive rulings made by the trial court when it dismissed Mr. Checkan's complaint, we are of the opinion that the merits of the case should not have been ruled upon by the trial court without first assessing the personal jurisdiction defense invoked by the Appellee. We addressed the same issue in another case over a decade ago. *See Sutton v. Stolt-Nielsen Transp. Grp., Ltd.*, No. E2008-01033-COA-R3-CV, 2009 WL 499521 (Tenn. Ct. App. Feb. 27, 2009).[4] In *Sutton*, a class action lawsuit involving allegations of a price-

---

[4] Notably, we observe that the Appellee specifically referenced *Sutton* in a memorandum filed in

fixing conspiracy, the defendants filed a motion to dismiss on two bases: lack of personal jurisdiction and failure to state a claim. *Id.* at *1. The trial court in *Sutton* granted the motion for failure to state a claim, but it explicitly declined to rule on the jurisdictional issue. *Id.*

When the case was later appealed to this Court, we confronted what we regarded as a question of timing, namely, "when facing a motion to dismiss pursuant to both 12.02(2) and 12.02(6), must the trial court address the 12.02(2) defense first?" *Id.* at *2. Although we could not locate any Tennessee authority then-existing on the question, we noted that the matter had been considered by federal courts under the federal counterparts to our own rules of civil procedure. In surveying this law, we pointed favorably to a decision of Judge Friendly's, as well as other federal court holdings:

> In *Arrowsmith v. United Press Int'l,* 320 F.2d 219 (2d Cir. 1963), the district court dismissed plaintiff's action for failure to state a claim without addressing defendant's personal jurisdiction defense. *Id.* at 221. Judge Friendly, writing for the appellate court, remanded, finding that the district court must first decide the jurisdictional question:
>
>> Not only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first. A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice. We shall therefore vacate the judgment dismissing the complaint for failure to state a claim on which relief can be granted and remand the case for consideration of the issue of jurisdiction over the person of the defendant and, in the event that this be found, the issue of venue, prior to consideration of the merits.
>
> *Id.;* see also, *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1089 (10th Cir. 1998) ("Because a court without jurisdiction over the parties cannot render a valid judgment, we must address Defendants' personal jurisdiction argument before reaching the merits of the case."); *Nw. Nat'l Cas. Co. v. Global Moving & Storage, Inc.,* 533 F.2d 320, 323 (6th Cir. 1976)

---

support of its motion to dismiss, stating in a footnote that *Sutton* "analyz[es] the order in which a court must address alternative substantive and procedural arguments on a motion to dismiss."

(holding that the trial court erred by entering a judgment in favor of a defendant before determining that it had the requisite personal jurisdiction); *Bruce v. Fairchild Indus., Inc.,* 413 F.Supp. 914, 916 (D.C. Okl. 1975) ("When a Motion to Dismiss is urged based on lack of personal jurisdiction, such Motion must be passed on by the Court prior to considering any Motions going to the merits of the case...."); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (2008).

*Id.* Although we acknowledged certain exceptions had been carved out against this general rule and noted that defendants had an option of waiving a personal jurisdiction defense so that a defense for failure to state a claim could be considered, we pointed out that the defendants before us in *Sutton* had not agreed to waive their 12.02(2) defense. *Id.* at *3. In explaining our decision to follow the general rule from the federal courts and thereby vacate the trial court's dismissal order and remand for consideration of the jurisdictional question, we stated:

> [W]e are concerned about the validity of an order affecting a defendant over which the court may not have jurisdiction. For a future claim to be precluded by *res judicata,* the court entering the initial order of dismissal must have been of competent jurisdiction. *Lee v. Hall,* 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). Accordingly, the adjudication in the present case might not operate as a bar to future claims because the jurisdictional question was never resolved. Second, for the sake of judicial economy, we think that the trial court should determine jurisdiction first so that we, as a reviewing court, can consider the full range of issues at the same time. We understand the parties' desire for an authoritative answer on the substantive question, but decline to render an advisory opinion on this issue. Were a subsequent court to find that jurisdiction over these defendants is lacking, any opinion by this Court on the substantive issue would be of dubious authority.

*Id.*

As we have already noted, the briefing from the Appellee in this appeal indicates that it "expressly reserves" the jurisdictional defense, and when we inquired into the matter further at oral argument, counsel for the Appellee reiterated this position regarding the defense, stating that "it has not been waived." In light of this fact and the trial court's failure to address the jurisdictional issue before entertaining the merits, we act here as we did in *Sutton* and vacate the trial court's dismissal order and remand the case for consideration of the Appellee's personal jurisdiction defense.

**CONCLUSION**

For the reasons stated above, we vacate the trial court's order of dismissal and remand for consideration of the Appellee's personal jurisdiction defense.


                                        s/ Arnold B. Goldin
                                        ARNOLD B. GOLDIN, JUDGE