### In re HEAVEN L.F. et al.[1]

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 4, 2010 Session.

Feb. 19, 2010.

Permission to Appeal Denied by
Supreme Court May 6, 2010.

1. This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

James Reed Brown, Byrdstown, Tennessee, for the appellant, Tonyia W.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Joshua Davis Baker, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Mother appeals the termination of her parental rights to her four children. The trial court terminated Mother's parental rights on the grounds of severe child abuse, persistence of conditions, substantial noncompliance with the requirements of the permanency plan, and abandonment by failure to provide a suitable home as well as on a finding that termination of her parental rights was in the best interests of the children. We affirm.

The Department of Children's Services ("the Department") removed the children from the parents' home in April 2006 after allegations arose that Father had sexually abused the eldest daughter. Thereafter, the Department filed a petition in the Juvenile Court of Pickett County to have the children declared dependent and neglected. On March 27, 2007, the juvenile court found that the children were dependent and neglected and that both parents had committed severe child abuse. The juvenile court also issued a restraining order prohibiting Father from having any contact with the children. The children were placed into the legal custody of the Department following a hearing on April 20, 2006.

Both parents appealed to the circuit court. Following a de novo review on December 2, 2008, the circuit court found that both parents had committed severe child abuse and that the children were dependent and neglected. The parents appealed that ruling to this court. In a decision entered on February 4, 2009, we affirmed the circuit court's decision finding, *inter alia*, that both parents had committed severe child abuse and that the children were dependent and neglected. *See In the Matter of H.L.F.*, 297 S.W.3d 223 (Tenn.Ct.App.2009). Father did not appeal our decision; thus, our ruling that the father had committed severe child abuse was a final judgment. Mother, however, sought permission to appeal our decision to the Supreme Court. The Supreme Court denied her application for permission to appeal on June 15, 2009, at which time our ruling that Mother had committed severe child abuse became a final judgment and was *res judicata*.

In the interim, the children remained in the Department's custody. Prior to the commencement of this action, the Department created four identical permanency plans addressing the needs of each of the four children. A Department caseworker,

Stone Steele, was assigned to Mother, and Mother was provided with in-home parenting classes, a psychological evaluation, and supervised visitation with the children. Mother's caseworker met with her periodically to discuss the permanency plan and its requirements. Despite the efforts of the Department and the requirement in the permanency plan that Mother provide "suitable, stable, secure and safe housing," Mother continued to reside with Father and refused to believe that Father had sexually abused their daughter. Mother also continued to demonstrate inappropriate behavior such as sending her Department caseworker inappropriate sexually oriented text messages on the cellular phone provided to her by the Department.[2]

On August 20, 2007, the Department filed this action, seeking to terminate the parental rights of Mother and Father on the grounds of severe child abuse, abandonment by failure to establish a suitable home, substantial noncompliance with the permanency plan, and persistence of conditions. The trial was held on April 15, 2009. At the time of trial, Mother was still living with Father and continued to express disbelief that Father had sexually abused their daughter. The trial court found that both parents' parental rights should be terminated on the grounds of severe child abuse, abandonment by failure to provide a suitable home, substantial noncompliance with the requirements of the permanency plan, and persistence of conditions. The trial court also found that the termination of the parents' parental rights was in the best interests of the children. The trial court terminated Mother and Father's parental rights on July 10, 2009. Mother filed a timely appeal; Father did not appeal.

**2.** Father, who was also provided a permanency plan by the Department, had made no efforts to meet the requirements of his plan

## ANALYSIS

■ Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Hawk v. Hawk,* 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. *In re S.L.A.,* 223 S.W.3d 295, 299 (Tenn.Ct.App.2006).

■ Parental rights may be terminated only where a statutorily defined ground exists. Tenn.Code Ann. § 36–1–113(c)(1); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.,* 980 S.W.2d 620, 622 (Tenn.Ct.App.1998). The petitioner has the burden of proving that there exists a statutory ground for termination, such as abandonment or failing to remedy persistent conditions that led to the removal of the child. Tenn.Code Ann. § 36–1–113(c)(1); *Jones,* 92 S.W.3d at 838. Only one ground need be proved, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.,* 118 S.W.3d 360, 367 (Tenn.2003). In addition to proving one of the grounds for termination, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn.Code Ann. § 36–1–113(c)(2); *In re F.R.R.,* 193 S.W.3d 528, 530 (Tenn. 2006); *In re A.W.,* 114 S.W.3d 541, 544 (Tenn.Ct.App.2003); *In re C.W.W.,* 37 S.W.3d 467, 475–76 (Tenn.Ct.App.2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child). Therefore, a court may terminate a person's parental rights if

such as undergoing a psychosexual evaluation.

(1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is clearly and convincingly established that termination of the parent's rights is in the best interest of the child. Tenn.Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.,* 215 S.W.3d 793, 810 (Tenn.2007); *In re Valentine,* 79 S.W.3d 539, 546 (Tenn.2002).

■ Whether a statutory ground has been proved by the requisite standard of evidence is a question of law to be reviewed de novo with no presumption of correctness. *In re B.T.,* No. M2007–01607–COA–R3–PT, 2008 WL 276012, at *2 (Tenn.Ct.App. Jan. 31, 2008) (no Tenn. R.App. P. 11 application filed) (citing *In re Adoption of A.M.H.,* 215 S.W.3d at 810).

### GROUNDS FOR TERMINATION

■ The trial court granted termination of Mother's parental rights on several grounds including the ground of severe child abuse. Tennessee Code Annotated § 36–1–113(g)(4) provides that a parent's rights may be terminated if a prior court order found the parent committed severe child abuse against the child who is the subject of the petition, or any sibling or half-sibling of the child, or any other child residing in the home of the parent. Tenn. Code Ann. § 36–1–113(g)(4). One of the issues raised by Mother on appeal is that the trial court erred by finding that the issue of Mother having committed severe child abuse was *res judicata.* We find no merit to Mother's contention.

Mother's four children were previously found to be dependent and neglected based upon a finding that Mother had committed severe child abuse, as defined in Tennessee Code Annotated § 37–1–

102(b)(21) (2008).[3] The finding in 2008 that Mother committed severe child abuse of her children was affirmed by this court in 2009 in *In the Matter of H.L.F.,* 297 S.W.3d 223. Mother applied for permission to appeal that decision to the Tennessee Supreme Court; her application was denied on June 15, 2009. Thus, the order finding that Mother had committed severe child abuse became a final, non-appealable judgment on June 15, 2009. The Final Decree of Guardianship terminating Mother's parental rights to the four children at issue was entered a month later, on July 10, 2009.

■ The doctrine of *res judicata* applies when "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Galbreath v. Harris,* 811 S.W.2d 88, 90 (Tenn.Ct.App.1990). This court previously applied the doctrine of *res judicata* to prevent a parent from re-litigating whether she committed severe child abuse in a later termination of parental rights proceeding, when such a finding had been made in a previous dependency and neglect action. *See State v. Tate,* No. 01–A–01–9409–CV–00444, 1995 WL 138858, at *5 (Tenn.Ct.App. Mar. 31, 1995). Mother and the Department were parties in the dependency and neglect action and the issue of whether Mother committed severe child abuse was fully litigated in that action. Therefore, the issue of whether Mother committed severe child abuse is *res judicata* and the trial court properly found by clear and convincing evidence that Mother's parental rights should be terminated

**3.** The definition for "severe child abuse" is now codified at Tenn.Code Ann. § 37–1– 102(b)(23) (2009).

pursuant to Tenn.Code Ann. § 36–1–113(g)(4).

While only one ground must be proven for termination of a parent's parental rights, we have reviewed the record and find there is clear and convincing evidence to also establish that Mother failed to meet the requirements of the permanency plan, failed to remedy the conditions which necessitated the children's placement in Department custody, and abandoned the children by failing to provide a suitable home for them. Thus, the trial court properly found that there were four grounds for termination of Mother's parental rights.

### Best Interests of the Children

■ If one statutory ground for termination is proven by clear and convincing evidence, a parent's rights may be terminated if it is also determined that termination of the parent's rights is in the best interests of the children. *See In re D.L.B.,* 118 S.W.3d at 367. We have affirmed the trial court's findings on the four grounds for termination of Mother's parental rights. We must now determine whether termination of Mother's parental rights is in the best interests of her four children.

■ Under Tennessee Code Annotated § 36–1–113(i), the factors looked to in order to determine what is in the children's best interests are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36–5–101.

Tenn.Code Ann. § 36–1–113(i)(1)–(9) (2009). The foregoing list is not exhaustive and the statute does not require that the trial court find every factor applicable in order to find that termination is in the children's best interests. *In re M.A.R.,* 183 S.W.3d 652, 667 (Tenn.Ct.App.2005).

The trial court correctly found that termination of Mother's parental rights was in the children's best interests based upon several of the statutory factors. Mother

had not made an adjustment to the circumstances, conduct, or conditions as to make it safe and in the children's best interests to be in her home. Mother continued to reside with Father, who was also found to have committed severe child abuse, and she refused to believe Father had sexually abused their eldest daughter. The court also found that the children were doing well in their current foster home placement and their foster parents wished to adopt them.

The evidence in the record clearly and convincingly demonstrates that termination of Mother's parental rights is in the best interests of the children. The children were removed from the home of Mother and Father following the allegations surrounding Father sexually abusing one of their children and other young females, as well as the inappropriate highly sexualized behavior of Mother. Mother and Father were both adjudged to have committed severe child abuse. *See* Tenn. Code Ann. § 36–1–113(i)(6). Despite this, Mother continued to reside with Father and refused to acknowledge that any abuse had occurred. Despite the reasonable efforts of the Department and the completion by Mother of some of the requirements of the permanency plan, Mother did not make a lasting adjustment in the circumstances, conduct, or conditions to make it safe and in the children's best interest to be returned to her care. *See* Tenn.Code Ann. § 36–1–113(i)(1)–(2). Mother continued to demonstrate inappropriate behavior, notably sending sexually oriented text messages to her Department caseworker on the phone she was given by the Department in order to stay in contact. *See* Tenn.Code Ann. § 36–1–113(i)(8). The record showed that the children were in a stable, loving environment in their current foster home, that the foster family wished to adopt them, and that the children were

doing well there. *See* Tenn.Code Ann. § 36–1–113(i)(5).

The best interests of the children are to be determined from the perspective of the children rather than the parent, *State, Department of Children's Services v. L.H.*, 2007 WL 2471500, at *7 (Tenn.App. 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn.Ct.App.2004)), and we find that the evidence in the record clearly and convincingly supports the trial court's finding that termination of Mother's parental rights was in the children's best interests. Therefore, we affirm the trial court's finding on this issue.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Department of Children's Services due to Mother's indigency.