# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 12, 2014 Session

## MYRTLE ROBINSON, ET AL. V. KENNETH A. OKPOR, MD, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00312513     Gina C. Higgins, Judge**

---

**No. W2014-00030-COA-R3-CV - Filed January 9, 2015**

---

The trial court granted summary judgment to the Appellee medical providers on the basis of Appellant's failure to comply with the health care liability notice provisions, expiration of the applicable statute of limitations, failure to state a claim upon which relief can be granted, and *res judicata*. We affirm as to the trial court's ruling that Appellant's claims are barred by the doctrine of *res judicata*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and W. MICHAEL MALOAN, SP., J., joined.

Al H. Thomas and Aaron L. Thomas, Memphis, Tennessee, for the appellant, Myrtle Robinson, on behalf and as personal representative of Fannie Oliver Zinn.

Jennifer S. Harrison and Lauren Dunavin Callins, Memphis, Tennessee, for the appellees, Kenneth A. Okpor, M.D., and Memphis Lung Physicians, P.C.

## MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion

(....continued)

**Background**

This is the second case dealing with the same set of facts. *See **Robinson v. Baptist Memorial Hosp.***, No. W2013-01198-COA-R3-CV, 2014 WL 3407888 (Tenn. Ct. App. July 11, 2014), *perm. app. denied*, (Tenn. Dec. 18, 2014) (hereinafter, "***Robinson I***"). Accordingly, we take our recitation of the facts from our prior Opinion:

> In November 2005, Fannie Oliver Zinn ("Decedent") underwent treatment for endometrial cancer. In April 2006, when Ms. Zinn was 88 years old, she was diagnosed with terminal, metastatic cancer. Ms. Zinn opted to forego aggressive treatment, and sought only palliative care for symptomatic relief.
>
> On or about July 19, 2006, Ms. Zinn presented to her primary physician Dr. Hassan Haddad's office, complaining of shortness of breath. Dr. Haddad diagnosed fluid on Ms. Zinn's lungs, placed her on a diuretic and discharged her. On or about July 20, 2006, Ms. Zinn called Dr. Haddad to report that her symptoms had not abated and had, in fact, become worse. Dr. Haddad made arrangements for Ms. Zinn to be admitted to Baptist Memorial Hospital ("BMH"). Further examination at BHM revealed recurrent malignant pleural effusions around her lungs, which were caused by her malignant lung cancer.[2] At BMH, Ms. Zinn underwent thoracentesis (i.e., draining fluid off the lung using a needle and local anesthetic), which provided relief. X-rays taken before and after the thoracentesis revealed bi-lateral pleural effusions, and Ms. Zinn was admitted to BMH for further evaluation. The radiology reports for these x-rays were dictated on July 20, 2006 at 7:58 a.m. and 9:12 a.m., and

---

(.....continued)
would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Pleural Effusions are excess fluid between the two membranes that cover the lungs (the visceral and parietal pleurae) that separate the lungs from the chest wall. A small quantity of fluid is normally spread thinly over the visceral and parietal pleurae and acts as a lubricant between the two membranes. Any significant increase in the quantity of pleural fluid is a pleural effusion. The most common symptoms of pleural effusion are chest pain and painful breathing (pleurisy).

were transcribed later that day at 3:37 p.m. According to the record, Ms. Zinn's bilateral pleural effusions, which caused both of her lungs to continue to fill with fluid, were a direct result of the spread of her terminal cancer.

On July 20, 2006, Dr. Kenneth A. Okpor, M.D., a pulmonologist/critical care specialist, was consulted to discuss various options for treatment. After examining Ms. Zinn, Dr. Okpor explained three treatment options: (1) repeat thoracentesis as needed, (2) a permanent chest draining tub (Pleurex catheter) for slow and constant draining, or (3) a video assisted thoracic surgery ("VATS") pleurodesis, which involves the infusion of a talc solution into the pleural space surrounding the lungs to prevent a recurrent build-up of fluid. Dr. Okpor recommended option 3, the VATS pleurodesis.

On July 24, 2006, Ms. Zinn underwent a left-sided VATS pleurodesis, which was performed by Dr. Edward Todd Robbins and Dr. Garrettson Smith Ellis. Dr. Robbins testified that, at the time of the VATS procedure, he was aware that Ms. Zinn was suffering from bi-lateral effusions. Ms. Zinn died on July 27, 2006 as a result of complications from her operation.

After his initial examination of Ms. Zinn, on July 20, 2006, Dr. Okpor dictated a consult note at 3:37 p.m. on that day.[3] Dr. Okpor had allegedly reviewed the x-rays and report from July 20, which showed bi-lateral effusions, and his initial consultation states that: "Chest x-ray was reviewed and it showed a large left-sided pleural effusion." On August 7, 2006, after Ms. Zinn's death, Dr. Okpor logged onto the BMH website to authenticate his July 20, 2006 consult note. During his authentication, Dr. Okpor edited the original note. Specifically, in his authenticated note, he diagnosed Ms. Zinn with bi-lateral pleural effusions, whereas his original consultation note indicated only a "left-sided effusion." Although pre-authenticated versions of doctors' notes are not usually saved in the BMH system, here, Dr. Okpor's pre-authenticated version of Ms. Zinn's information was preserved because Dr. Robbins had printed a hard-copy of the

---

[3] We note that the date and time that Dr. Okpor dictated his consult note is the exact same date and time that the radiology reports for Ms. Zinn's x-rays were transcribed . . . . From our review of the record, this appears to merely be a coincidence.

consultation note in preparation for Ms. Zinn's July 24, 2006 VATS surgery. Dr. Robbins placed the copy of Dr. Okpor's pre-authenticated note in Ms. Zinn's medical record, where it was allegedly discovered by plaintiffs some five years later, . . . .

*Robinson I*, 2014 WL 3407888, at *1–*2 (footnotes in original with omissions noted).

Ms. Zinn's daughters, Myrtle Robinson and Willette Jeffries, as their mother's personal representatives (together, "Original Plaintiffs"), filed suit against BMH, Dr. Robbins, Dr. Ellis, and Dr. Haddad in the Circuit Court at Shelby County, claiming healthcare liability. BMH, Dr. Ellis, and Dr. Haddad all obtained summary judgment in their favor, leaving only Dr. Robbins as a viable defendant. Prior to a hearing on Dr. Robbins' motion for summary judgment, Original Plaintiffs were granted leave to amend their complaint to aver a cause of action against Dr. Robbins for lack of informed consent. Dr. Robbins' summary judgment motion was, therefore, held in abeyance pending the amendment.

Eventually, Original Plaintiffs filed another motion to amend their complaint, this time to add Dr. Okpor and his employer, Memphis Lung Physicians, P.C., ("MLP," and together with Dr. Okpor, "Appellees") as defendants. According to our prior Opinion:

> [Original Plaintiffs] were granted leave, on August 19, 2011, to file a second amended complaint, which was entered on February 1, 2012. . . . Concerning Dr. Okpor and MLP, the second amended complaint states,
>
>> 27. On July 20, 2006, when Kenneth A. Okpor, M.D. reviewed Ms. Zinn's chest x-rays . . . . Dr. Okpor had a duty to comply with the recognized standard of acceptable medical care in Shelby County and to diagnose Ms. Zinn's bi-lateral pleural effusions and recommend treatment appropriate under the circumstances.
>> 28. Dr. Okpor failed to diagnose Ms. Zinn's bi-lateral effusions and instead diagnosed only a left-sided pleural effusion. This failure was a negligent deviation from the recognized standard of care and it caused injury as follows.

29. Dr. Okpor's aforementioned negligence caused the injurious VATS procedure to be performed. . . . Dr. Okpor relied on his negligent diagnosis of only a left-sided pleural effusion and recommended that Ms. Zinn undergo a left-sided VATS procedure by Dr. Robbins rather than the other options ... such as pleurex catheter or repeat thoracentesis. Dr. Okpor's recommendation was accepted and implemented.

30. If Dr. Okpor had complied with his duty and diagnosed Ms. Zinn's bi-lateral pleural effusions, Dr. Okpor would not have recommended that Ms. Zinn undergo a left-sided VATS procedure rather than the other options . . . and Ms. Zinn would not have undergone a VATS procedure.

*Robinson I*, 2014 WL 3407888, at *3.

Eventually, Appellees filed a motion for summary judgment, alleging that the Original Plaintiffs' claim was barred by the statute of repose. On December 11, 2012, the trial court granted the motion, concluding that the Original Plaintiffs failed to show "an affirmative concealment of material fact" as would be required to toll the statute of repose. The trial court certified its judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Original Plaintiffs appealed and this Court affirmed, concluding that the claim against Appellees was barred by the statute of repose. *Id.* at *14–*15.

After the grant of summary judgment in the healthcare liability action, on July 22, 2013, Plaintiff/Appellant Myrtle Robinson[4] ("Appellant"), as personal representative of Ms. Zinn, filed the instant lawsuit, this time naming only the Appellees as defendants. The complaint alleged causes of action for misrepresentation and conversion (for the loss of the right to maintain a wrongful death action). Specifically with regard to misrepresentation, the complaint averred:

16. When Dr. Okpor edited his 7/20/2006 consult note on August 7, 2006, in the manner in which he did [i.e., "effectively eras[ing] all evidence of Dr. Okpor's failure to diagnose Ms. Zinn's right-sided pleural effusion"], he thereby represented that he had diagnosed Ms. Zinn on July 20, 2006 as having both a

---

[4] Ms. Jeffries did not take part in the second lawsuit.

left-sided pleural effusion and a right-sided pleural effusion. This representation was false, because on July 2006, Dr. Okpor did not diagnose Ms. Zinn as having a left-sided effusion and that is why he recommended a VATS procedure.

17. When Dr. Okpor made the aforementioned false representation on August 7, 2006, he knew it was false; and he intended that anyone looking at the medical record would rely on the false representation and thereby refrain from taking action against him for his failure to diagnose Ms. Zinn's right-sided pleural effusion.

18. When [Appellant] reviewed Ms. Zinn's medical records, [she] did not know that Dr. Okpor's aforementioned representation was false, and as alleged above . . . , Ms. Robinson relied on the false representation and she was justified in her reliance on the truth of that representation.

19. As a result of Ms. Robinson's reliance on Dr. Okpor's aforementioned false representation, she refrained from taking legal action against Dr. Okpor for the wrongful death of Ms. Zinn and she has therefore lost the value of that claim.

With regard to the conversion claim, the complaint averred:

24. Plaintiff [Ms. Robinson] had/has a property ownership interest and rights in the medical records of Ms. [] Zinn as her daughter and/or as her personal representative.

25. When Dr. Okpor edited his 7/20/2006 consult note on August 7, 2006, in the manner in which he did . . . , he thereby assumed and exercised control over the medical records of Ms. [] Zinn in a manner that was inconsistent with the aforementioned ownership rights of Ms. Robinson, and Dr. Okpor is guilty of Conversion for assuming and exercising such control.

26. As a proximate cause of Dr. Okpor's aforementioned Conversion, Ms. Robinson lost the value of the wrongful death action against Dr. Okpor . . . .

The second lawsuit was later transferred to the same court that previously adjudicated the issue of the Appellee's liability in the healthcare liability action.

On September 11, 2013, Appellees filed a motion to dismiss/for summary judgment,

alleging: (1) that the complaint should be construed as a healthcare liability action, subject to the Tennessee Healthcare Liability Act notice requirements; (2) that the ruling in the healthcare liability lawsuit operated as a bar to recovery in the instant lawsuit, based on the doctrine of *res judicata*; (3) that the complaint failed to state a cause of action for conversion; and (4) the claims were barred by the statute of limitations.

On December 2, 2013, the trial court entered an order granting the Appellees' motion to dismiss/for summary judgment, ruling in the Appellees' favor on all their arguments. Appellant appealed.

## Issues Presented

Appellant raises five issues in her appellate brief:

1. Did the Circuit Court err when it ruled that Plaintiff-Appellant's lawsuit against Defendants-Appellees Kenneth A. Okpor, M.D. and Memphis Lung Physicians, P.C. was a healthcare liability action that must be pursued in compliance with T.C.A. § 29-26-115, T.C.A. § 29-26-121, and T.C.A. § 29-26-122 (and dismissed this case for Plaintiff-Appellant's failure to comply with those statutes)?

2. Did the Circuit Court err when it ruled that Plaintiff-Appellant's complaint against Defendants-Appellees Kenneth A. Okpor, M.D. and Memphis Lung Physicians, P.C. was barred by the doctrine of *res judicata* or claim preclusion (and dismissed this case)?

3. Did the Circuit Court err when it ruled that Plaintiff-Appellant's complaint against Defendants-Appellees Kenneth A. Okpor, M.D. and Memphis Lung Physicians, PC. failed to state a cause of action for conversion (and dismissed this case)?

4. Did the Circuit Court err when it ruled that the "discovery rule" does not apply to the 3-year statute of limitations for actions for the conversion of personal property codified in T.C.A. § 28-3-105(2) (and dismissed this case)?

5. Did the Circuit Court err when it dismissed Plaintiff-Appellant's lawsuit against

Defendants-Appellees Kenneth A. Okpor, M.D. and Memphis Lung Physicians, P.C. without addressing and ruling on Plaintiff-Appellant's "Count I. Misrepresentation"?

Because we conclude that Appellant's cause of action is barred by the doctrine of *res judicata*, we affirm the decision of the trial court.

## Standard of Review

In considering an appeal from a trial court's grant of a motion to dismiss, we take all allegations of fact in the complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn R. App. P. 13(d); ***Mid-South Industries, Inc. v. Martin Mach. & Tool, Inc.***, 342 S.W.3d 19, (Tenn. Ct. App. 2010) (citing ***Owens v. Truckstops of America***, 915 S.W.2d 420, 424 (Tenn. 1996)).

In addition to the pleadings, Appellees rely on other documents in the record to support judgment in their favor. According to this Court:

> When a trial court considers matters outside of the pleadings, however, . . . a motion to dismiss is converted to a motion for summary judgment. *E.g.*, ***Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.***, 969 S.W.2d 917, 920 (Tenn. Ct. App. 1997). We review a trial court's award of summary judgment de novo with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ***Id.*** at 83 (quoting Tenn. R. Civ. P. 56.04; accord ***Penley v. Honda Motor Co.***, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. ***Id.*** (citing *see* ***Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 88 (Tenn. 2000); ***McCarley v. W. Quality***

***Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1998); ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn.1993)).

***Moore v. State***, 436 S.W.3d 775, 783 (Tenn. Ct. App. 2014).

## Analysis

Because our resolution of this issue is dispositive of this appeal, we begin first with Appellees' contention that Appellant's claims are barred by the doctrine of *res judicata*. In ***Lien v. Couch***, 993 S.W.2d 53 (Tenn. Ct. App. 1998), this Court discussed various aspects of the doctrine of *res judicata*. We stated:

> Res judicata is a claim preclusion doctrine that promotes finality in litigation. *See* ***Moulton v. Ford Motor Co.***, 533 S.W.2d 295, 296 (Tenn. 1976); ***Jordan v. Johns***, 168 Tenn. 525, 536–37, 79 S.W.2d 798, 802 (1935). It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *See* ***Richardson v. Tennessee Bd. of Dentistry***, 913 S.W.2d 446, 459 (Tenn. 1995); Collins v. Greene County Bank, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995).
>
> Parties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. *See* ***Lee v. Hall***, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations. *See* ***White v. White***, 876 S.W.2d 837, 839–40 (Tenn. 1994).
>
> The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together. *See* ***Bio-Technology Gen. Corp. v. Genentech, Inc.***, 80 F.3d

1553, 1563 (Fed. Cir. 1996); *Hawkins v. Dawn*, 208 Tenn. 544, 548, 347 S.W.2d 480, 481–82 (1961); *Vance v. Lancaster*, 4 Tenn. (3 Hayw.) 130, 132 (1816). The principle is subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation. *See Davidson v. Capuano*, 792 F.2d 275, 279 (2d Cir.1986); *Carris v. John R. Thomas & Assocs., P.C.*, 896 P.2d 522, 529–30 (Okla. 1995); *see also Rose v. Stalcup*, 731 S.W.2d 541, 542 (Tenn. Ct. App. 1987) (holding that a subsequent action was not barred because the initial court did not have jurisdiction over the claim). Thus, the Restatement of Judgments points out:

> The general rule [against relitigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

*Restatement (Second) of Judgments* § 26(1)(c) cmt. c (1982).

*Lien*, 993 S.W.2d at 55–56; *see also Ostheimer v. Ostheimer*, No. W2002-02676-COA-R3-CV, 2004 WL 689881, at *5 (Tenn. Ct. App. Mar. 29, 2004) ("[C]laim preclusion bars any claims that 'were or could have been litigated' in a second suit between the same or related parties involving the same subject matter.").

Accordingly, in order for *res judicata* to bar Appellant's suit, the above four elements must be met. We begin first with whether "a court of competent jurisdiction rendered the prior judgment." *Lien*, 993 S.W.2d at 56 (citing *Lee*, 790 S.W.2d at 294). In this case, the prior judgment upon which Appellees base their *res judicata* argument was the order granting summary judgment in Appellant's healthcare liability action. There appears to be no dispute

that the Circuit Court of Shelby County had jurisdiction over that claim. Accordingly, the first element has been met.

Next, Appellees must show that "the prior judgment was final and on the merits." *Lien*, 993 S.W.2d at 56 (citing *Lee*, 790 S.W.2d at 294). In *Robinson I*, the trial court granted summary judgment on the basis of the expiration of the statute of repose as to the Appellees. The trial court certified this judgment as final as to the Appellees. This Court affirmed summary judgment in favor of the Appellees. *See Robinson I*, 2014 WL 3407888, at *14–*15. "A summary judgment [order] entered pursuant to the provisions of [Rule] 54.02 [of the Tennessee Rules of Civil Procedure] is generally held to be an adjudication on the merits for the purpose of *res judicata*." *Norris v. E. Tenn. Children's Hosp.*, 195 S.W.3d 78, 82–83 (Tenn. Ct. App. 2005) (citing *Harrogate Corp. v. Sys. Sales Corp.*, 915 S.W.2d 812, 816 (Tenn. Ct. App. 1995) (acknowledging that "the granting of summary judgment is deemed conclusive of all issues reached and decided by such summary judgment")). On December 18, 2014, the Tennessee Supreme Court denied permission to appeal in *Robinson I*. A mandate in that case was issued on December 22, 2014. Accordingly, the judgment regarding the Appellees is now final.[5] *See In re Heaven L.F.*, 311 S.W.3d 435, 437 (Tenn. Ct. App. 2010) (noting that when the Tennessee Supreme Court denied petitioner's application for permission to appeal, the judgment "became a final judgment and was *res judicata*"). Accordingly, this element has been met.

Next, Appellees must show that "the same parties or their privies were involved in both proceedings." *Lien*, 993 S.W.2d at 56 (citing *Lee*, 790 S.W.2d at 294). Appellant does not appear to argue that the same parties were not involved in both lawsuits. Indeed, our review of the record shows that Ms. Robinson, as a personal representative of Ms. Zinn, was a plaintiff in both proceedings. Likewise, Dr. Okpor and MLP, the defendants in this case, were named as defendants in *Robinson I*. Accordingly, the same parties were clearly involved in both actions and this element has been met.

Finally, Appellees must show that "both proceedings involved the same cause of action." *Lien*, 993 S.W.2d at 56 (citing *Lee*, 790 S.W.2d at 294). Appellant argues that this

---

[5] We note that the trial court incorrectly found that *Robinson I* was final while the Original Plaintiffs' application for permission to appeal to the Tennessee Supreme Court was pending. Tennessee courts have repeatedly held that cases are not final for *res judicata* purposes while an appeal is pending. *See Creech v. Addington*, 281 S.W.3d 363, 376–78 (Tenn. 2009) (quoting *McBurney v. Aldrich*, 816 S.W.2d 30, 34 (Tenn. Ct. App. 1991)); *see also In re Shyronne D.H.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097, at *6 (Tenn. Ct. App. July 7, 2011) ("[I]t is an inescapable conclusion that, in Tennessee, a judgment from a case in which an appeal is pending is not final and cannot be res judicata until all appellate remedies have been exhausted."). Although the trial court erred in finding the judgment in *Robinson I* final, at that time, the judgment is clearly final now.

case and ***Robinson I*** do not involve the same cause of action because Appellant contends that the actionable conduct occurred at different times. We respectfully disagree. First, we note that the law does not require that a cause of action actually be raised in the first action to be barred in a subsequent action. Instead, *res judicata* will bar a second suit on "all issues which were **or could have been** litigated in the former suit." ***Lien***, 993 S.W.2d at 56 (emphasis added) (citing ***Richardson***, 913 S.W.2d at 459). Here, Appellant was clearly on notice of the conduct alleged to constitute misrepresentation and conversion in this case during the prior litigation, as it served as the basis of the fraudulent concealment defense central to the dispute in ***Robinson I***. Indeed, the facts at issue in this case are nearly identical to the facts that constituted the fraudulent concealment defense in ***Robinson I***. Because "all the grounds for recovery arising from a single transaction or series of transactions [must be] brought together," the Appellant was required to litigate Dr. Okpor's alleged misrepresentation and conversion in ***Robinson I***. *See **Lien***, 993 S.W.2d at 55 (citing ***Bio-Technology***, 80 F.3d at 1563). Accordingly, *res judicata* clearly bars her claim in this case.

Furthermore, Appellant cites no law in her appellate brief supporting her argument that *res judicata* does not apply in this case. This Court has repeatedly held that the failure to support an argument with relevant authority results in a waiver on appeal. *See, e.g.*, ***Bean v. Bean***, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000); ***Forbess v. Forbess***, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011); ***Chiozza v. Chiozza***, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009); ***Lett v. Collis Foods, Inc.***, 60 S.W.3d 95, 105 (Tenn. Ct. App. 2001); ***Rampy v. ICI Acrylics, Inc.***, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994). Under these circumstances, we decline to reverse the trial court's ruling that *res judicata* bars Appellant's claims in this lawsuit. All other issues are pretermitted.

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Myrtle Robinson, and her surety.

_____
J. STEVEN STAFFORD, JUDGE